AO 91 (Rev. 08/09) Criminal Complaint

# UNITED STATES DISTRICT COURT
for the
Southern District of Ohio

| | |
|---|---|
| United States of America<br>v.<br><br>Marcus PHOENIX<br><br>*Defendant(s)* | )<br>)<br>) Case No.<br>) **1:19MJ -439**<br>)<br>) |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.
On or about the date(s) of ___March, 2019 - Present___ in the county of ___Hamilton___ in the
___Southern___ District of ___Ohio___, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. 841 | Distribution and Possession with Intent to Distribute a Controlled Substance |

This criminal complaint is based on these facts:

See Affidavit

☑ Continued on the attached sheet.

_____
*Complainant's signature*

Nelson Holden, TFO, DEA
*Printed name and title*

Sworn to before me and signed in my presence.

Date: 6/4/19

_____
*Judge's signature*

City and state: Cincinnati, Ohio

Hon. Karen L. Litkovitz, U.S. Magistrate Judge
*Printed name and title*

## AFFIDAVIT IN SUPPORT OF
## A CRIMINAL COMPLAINT

I, Nelson Holden, Task Force Officer for the Hamilton County Heroin Task Force, having been duly sworn, depose and state:

1. I am an investigative or law enforcement officer of the United States within the meaning of Section 2510 (7) of Title 18, United States Code, that is, an officer of the United States who is empowered by the law to conduct investigations of, and to make arrests for, the offenses enumerated in Title 18, United States Code, Section 2516.

2. I am a Sergeant with the Ohio State Highway Patrol (OSHP), currently assigned to the Heroin Coalition Task Force (HCTF) with twenty-nine (29) years of law enforcement experience. I am also deputized by the Drug Enforcement Administration (DEA) as a Task Force Officer (TFO) and have been since June 2015. I completed my law enforcement training at the OSHP Academy in Columbus, Ohio and have received extensive additional training in criminal investigations throughout my law enforcement career to include training in offenses involving controlled substances.

3. Facts set forth in this affidavit are based on personal knowledge derived from my participation in this investigation and upon information presented to me by other law enforcement officers involved in this case. The sources of my information and beliefs include:

a. Oral and written reports about this and other investigations which I have received from TFO's within the HCTF and other law enforcement authorities;

b. Physical surveillance conducted by TFO's of the HCTF and/or other law enforcement authorities and which have been reported to me either directly or indirectly;

1

4. By virtue of my involvement in these investigations, I have become familiar with the various means and mechanisms used by narcotics traffickers to import and distribute controlled substances and to remain at large without being detected by law enforcement. I am familiar with the fact that drug traffickers make tremendous profits through drug trafficking, and require large amounts of currency to operate surreptitiously. In this regard, I have obtained and executed numerous search warrants pursuant to which I have seized ledgers, notebooks, papers, and other related record-keeping instruments, all of which have been used to record multiple narcotics and related money laundering transactions, telephone books, diaries, invoices, beepers, cellular telephones and correspondence, all of which have contained evidence of narcotic trafficking and money laundering violations.

5. During the course of my law enforcement career I have conducted and participated in the investigation of numerous criminal offenses, including those involved in the current investigation. I have participated in hundreds of investigations including but not limited to: Aggravated Murder, Involuntary Manslaughter, Aggravated Robbery, Rape, Child Molestation, Burglary, Drug Trafficking and Theft which resulted in the successful prosecution of defendants in the State and Federal Courts. These investigations have also included the unlawful importation, possession with intent to distribute and distribution of illegal substances, the related money laundering instruments, the conducting of monetary transactions involving the proceeds of specified unlawful activities, and conspiracies associated with criminal narcotics offenses. These investigations during my career, which have resulted in the seizure of narcotics, arrests of suspects, their prosecution, conviction and the seizure of large amounts of U.S.

currency; and have involved: the use of confidential informants; undercover agents; toll records; physical surveillances and the execution of search warrants. I have planned, participated in and supervised the execution of numerous search warrants authorizing the search of drug traffickers, locations associated with drug traffickers and their co-conspirators, such as residences, businesses, storage facilities, outbuildings, safety deposit boxes, and vehicles. I have testified in grand jury proceedings; and have written reports and analyzed documents in the course of investigations.

6. I have been involved in numerous post-arrest interviews of individuals, interviewed defendants in conjunction with post-arrest proffers, interviewed confidential informants and other non-defendant individuals with knowledge of illegal drug trafficking. During such interviews and discussions with other experienced agents, I have become familiar with the day-to-day operations of distributors and transporters of controlled substances. I have gained knowledge regarding the various methods, techniques, codes, and/or jargon used by illegal drug traffickers in the course of their criminal activities, including the use of firearms to protect their narcotics related activities and of cellular telephones, pagers, and personal digital assistants to facilitate communications while attempting to avoid law enforcement scrutiny.

7. As a result of my participation in these, and other activities, I have gained particular knowledge in the use of undercover agents, confidential informants, physical surveillance, consensual recordings, investigative interviews, mail covers, garbage searches, GPS tracking devices, pole-mounted cameras, grand jury subpoenas and federal and state search warrants. In addition to using these investigative techniques, I have been required to analyze information resulting from traditional record sources,

such as financial records, utility records, and telephone toll and subscriber records, as well as nontraditional record sources, such as the informal ledgers routinely maintained by narcotics traffickers listing amounts of drugs received from sources and distributed to customers and the amounts of money received from customers and owed to sources, commonly referred to as pay-owe sheets. I have also gained experience in the identification and collection of drug and non-drug evidence.

8. By virtue of my training and experience, through my conversations with and review of reports from other experienced agents and officers who conduct drug investigations, I have become familiar with the methods used by drug traffickers to import, transport, store, safeguard, remit and/or launder drug proceeds; and the methods used by drug traffickers to collect, transport, store, safeguard, remit and/or launder drug proceeds; and the methods used by drug traffickers to obtain and utilize telephones, pagers, computers, and other devices in order to communicate with each other; and the jargon and/or codes commonly used when they refer to drugs and/or drug proceeds. As a result of my experience, I have become familiar with the day-to-day operations and the various tools, methods, trends, paraphernalia and related articles used by various traffickers in their efforts to manufacture, possess, import, conceal, package, use and distribute controlled substances.

9. I have also had discussions with other law enforcement officers and other cooperating individuals about the packaging and preparation of narcotics, methods of operations, and security measures which are often employed by narcotics traffickers. I have examined documentation of various methods in which illicit drugs are smuggled, transported, and distributed. Through these investigations, I have gained expertise in

the use of a variety of law enforcement techniques, including the utilization of confidential informants and undercover agents, the use of physical surveillance techniques, and various other types of electronic surveillance techniques, such as body wires and transmitters. Additionally, I have gained knowledge and expertise in the utilization of telephone toll analysis; the analysis of traditional types of records, including financial records, telephone records and utility records; and nontraditional records, including records routinely maintained by narcotics traffickers listing amounts of drugs delivered and amounts of money owed (pay-and-owe sheets). I have also gained knowledge and expertise in the collection and identification of drug evidence and the analysis and interpretation of taped conversations obtained by the methods detailed above.

10. This affidavit is intended to show only that there is sufficient probable cause for the arrest of Marcus PHOENIX and does not set forth all of my knowledge about this matter.

11. I am one of several law enforcement officers conducting an ongoing investigation into the drug-trafficking activities of Marcus PHOENIX, hereafter "PHOENIX." The facts contained in this affidavit are based upon personal knowledge, information from other TFO's with the HCTF, Special Agents (SA's) with the DEA, officers from other law enforcement agencies, cooperating sources that have provided reliable information to me, and checks of computerized indices and public records. I have not included every fact revealed thus far in this investigation; rather, the facts are tailored to show that probable cause exists to charge Marcus PHOENIX with the distribution of a controlled substance in violation of Title 21 U.S.C. § 841(a)(1), Distribution and Possession with Intent to Distribute a Controlled Substance.

## FACTS SUPPORTING PROBABLE CAUSE

12. In or about March 2019, your affiant began an investigation into a subject believed to be distributing fentanyl. This subject was falsely representing to purchasers that the substance being purchased was Percocet (oxycodone). One such purchaser used the purchased substance and overdosed. The subject required advanced life support and was hospitalized in an Intensive Care Unit (ICU) for several days, before regaining consciousness. That subject believed they had purchased Percocet (oxycodone) from a subject later identified as Marcus PHOENIX, hereafter PHOENIX. Toxicology on blood drawn from the overdosed subject, hereafter referred to as confidential source 1 (CS1), showed no presence of substances associated with the use of Percocet (oxycodone), but did show fentanyl, a schedule II controlled substance, in CS1's blood. The overdose event and subsequent required medical intervention to revive and sustain the life of CS1 are consistent with an overdose of fentanyl.

13. Your affiant collected data from emergency services related to the overdose event and also gathered medical records from CS1's medical treatment after the overdose. Those medical records show that CS1's blood contained fentanyl. No substances were located in CS1's blood which would indicate that they had used Percocet (oxycodone) prior to overdosing.

14. On April 1, 2019, your affiant was notified that CS1 had regained consciousness and provided information that prior to overdosing, they had met a black male, known only as "Zoe," to purchase a substance CS1 believed to be Percocet (oxycodone). After using the substance purchased from "Zoe," CS1 overdosed and was found unconscious in a vehicle. CS1 provided a phone number of 513-293-3235, for "Zoe."

15. Your affiant learned that "Zoe" drives a black Dodge Charger, a Cadillac, and a truck. CS1 stated that they sometimes met "Zoe" on Cordova Ave., near Savannah Ave., in North College Hill.

16. On April 4, 2019, your affiant spoke to Sergeant James Brenner, with the West Chester Police Department's (WCPD) Directed Patrol Unit (DPU), to provide an update on the investigation. During that update, your affiant informed Sgt. Brenner that a suspected source of supply (SOS) had been identified only as a black male, using the nickname "Zoe." TFO Holden also provided the cell phone number believed to be used by "Zoe," 513-293-3235.

17. On April 4, 4019, Sgt. Brenner notified your affiant that Detective Jason Flick, from WCPD's DPU, knew "Zoe" as Marcus PHOENIX. PHOENIX was the suspected source of supply (SOS) in a 2016 overdose death, which occurred in West Chester. WCPD had also arrested PHOENIX for Possession of Drugs and Trafficking Heroin in 2016. At the time of those investigations, PHOENIX was also using cellular phone number 513-293-3235.

18. Your affiant determined that PHOENIX had several prior felony convictions related to drugs. In 2013, PHOENIX was convicted in Butler County Court of Common Pleas, Case No. 2012-11-1985, for Trafficking in Heroin and Possession of Heroin. In 2017, PHOENIX was convicted of Aggravated Trafficking in Drugs and Possession of Cocaine, in Butler County Court of Common Pleas, Case No. 2017-06-0999.

19. Your affiant later showed a photograph of PHOENIX to CS1, and the CS1 stated that they were 90% sure that the photo of PHOENIX was the subject known to them as "Zoe."

20. CS1 agreed to make controlled purchases from PHOENIX for your affiant. Prior to each buy, detailed below, your affiant, and/or other agents from the HCTF, met with CS1 and conducted a search of their body and vehicle for any unauthorized funds or contraband, with none being found. CS1 was then fitted with a body mounted electronic recording/transmitting device, allowing agents to monitor the deal as it occurred and capture audio of the transaction. Following each deal, detailed below, agents again met with CS1, recovered the purchased substances and again conducted a search of the CS1's body and vehicle for any unauthorized funds and/or contraband. None was located before or after any of the controlled purchases listed below.

21. On April 8, 2019, your affiant utilized CS1 to conduct a buy walk from PHOENIX. Prior to the buy, CS1 contacted PHOENIX at 513-293-3235, to arrange the deal. PHOENIX directed CS1 to come to Cordova Ave., in North College Hill. CS1 was provided with $20.00 of recorded buy money to conduct the purchase of what the victim believed would be Percocet (oxycodone). After arriving on Cordova Ave., PHOENIX approached CS1 on foot, entered their vehicle and provided a white piece of paper containing what was later determined to be 0.213 grams of an acetyl fentanyl, fentanyl mixture. After the deal, the substance was recovered and submitted to the Hamilton County Coroner's Office (HCCO) Crime Laboratory, who issued lab report #CL19-03294, documenting their analysis.

22. Following the first buy from PHOENIX, CS1 confirmed that the subject known to them as "Zoe" was PHOENIX.

23. On April 15, 2019, your affiant utilized CS1 to conduct a second buy walk from PHOENIX. Prior to the buy, CS1 again contacted PHOENIX at 513-293-3235, and

8

PHOENIX directed the CS1 to come to Cordova Ave., in North College Hill, to conduct the transaction. CS1 was provided with $20.00 of recorded buy money to conduct the deal. Surveillance was established in the area prior to the CS1's arrival. After parking on Cordova, CS1 notified PHOENIX. TFO's Eveslage and Smith then observed a subject they later identified as PHOENIX exit 6415 Savannah Ave., and walk on Savannah to Cordova. On Cordova, PHOENIX met CS1 and provided a white piece of paper containing a substance, in exchange for the $20.00 of recorded buy money. PHOENIX then walked back to 6415 Savannah Ave., and was observed entering the front (Savannah facing) door, to the building. The purchased substance was recovered and submitted to the HCCO Crime Laboratory, which identified the purchased substance as 0.216 grams of fentanyl. The lab's analysis is memorialized in report #CL19-03545.

24. On April 23, 2019, TFO Schlie utilized CS1 to conduct a third buy walk form PHOENIX. CS1 again contacted PHOENIX at 513-293-3235 to arrange the deal. For this deal, PHOENIX directed the victim to drive to Gelhot Dr., in Fairfield, Butler County, OH. CS1 was provided with $40.00 of recorded buy money, to conduct the buy, of what CS1 believed to be Percocet (oxycodone). After arriving on Gelhot Dr., CS1 contacted PHOENIX. A short time later, PHOENIX arrived as a passenger in a vehicle. PHOENIX entered the CS1's vehicle and provided a paper fold, containing a substance later found to be 0.391 grams of fentanyl, in exchange for the $40.00 of recorded buy money. PHOENIX then departed. The purchased substance was recovered and submitted to the HCCO Crime Laboratory, who later issued report #CL19-03845, documenting their analysis.

25. On April 24, 2019, TFO Cox served an administrative subpoena to Duke Energy, requesting subscriber information for 6415 Savannah Avenue. Duke identified four apartments within 6415 Savannah Ave., and provided subscriber information for each apartment. Phone numbers for subscribers were also listed.

26. On April 30, 2019, TFO Schlie received call detail records for the phone number used by PHOENIX, 513-293-3235. TFO Schlie queried phone numbers for subscribers on Duke Energy's subscriber records against PHOENIX's call detail records. Those searches found that only one subscriber's phone number, 513-328-9639, provided to Duke Energy by Brittanie KEELING, for her service at 6415 Savannah Ave., Apartment #3, was in contact with PHOENIX's cell phone number.

27. During this investigation, your affiant has also consulted with the property manager for 6415 Savannah Avenue. While that subject did not recognize PHOENIX, he was able to confer with his maintenance staff, who recognized PHONEIX and knew him to stay with KEELING at 6415 Savannah Ave., Apartment #3.

28. On May 23, 2019, your affiant and brother agents from the HCTF conducted a trash pull at 6415 Savannah Ave. in North College Hill. Agents recovered bagged trash from a Rumpke trash can, which was placed at the curb in front of 6415 Savannah Avenue. During a search of that trash, agents recovered receipts from LaRosa's Pizzeria, bearing the name MARCUS PHOENIX, with an address of 6415 Savannah Ave., Unit #3. Agents also recovered two plastic baggies and torn corner piece from a plastic baggie. These items were consistent with packaging materials your affiant has observed drug traffickers to use in the past. Those plastic baggies were submitted to the HCCO Crime Laboratory for analysis. Their analysis was documented in lab report #CL19-04807,

and found that the corner piece of partial plastic bag contained the residue of fentanyl. Residue for the other two complete plastic bags contained residue of tetrahydrocannabinol and fentanyl.

29. On May 31, 2019, the Honorable Karen Litkovitz, United States Magistrate Judge for the Southern District of Ohio, reviewed an Affidavit In Support of an Application for a Search Warrant for 6415 Savannah Avenue, Apartment #3, Cincinnati, Hamilton County, Ohio 45239. After review, Judge Litkovitz signed a Search Warrant for that location.

30. On June 4, 2019, at approximately 6:50 a.m., your affiant and other agents from the HCTF and DEA executed the search warrant. PHOENIX was located in a bedroom of 6415 Savannah Avenue, Apartment #3, along with KEELING. PHOENIX and KEELING were found in bed. After both were secured, a search was conducted. Agents located approximately five (5) clear plastic pieces of baggie, containing white powder, believed to be fentanyl, and/or other controlled substances. Agents also located several digital scales. From the frame of the bed, on the side of the bed where PHOENIX was lying when he was located, agents recovered a cellular phone marked "BLU." Agents placed a call to 513-293-3235, the number used by CS1 to contact PHOENIX to coordinate the purchase of controlled substances, and that cellular phone began to ring.

31. All of the above described events occurred in the Southern District of Ohio.

32. Based on all of the information presented above, your affiant believes that probable cause exists that Marcus PHOENIX has violated Title 21 U.S.C. § 841, distribution of a controlled substance, to wit: fentanyl

_____
Nelson Holden
Task Force Officer
Hamilton County Heroin Task Force

Sworn before me, this 4 day of June, 2019.

_____
Honorable Karen L. Litkovitz
United States Magistrate Judge